IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02654-REB-KLM

PAUL MUTEBI,

Applicant,

v.

MICHAEL MUKASEY, and
ELIZABETH HUNT,

Respondents.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

This matter is before the Court on **Respondents' Motion to Dismiss Application for Writ of Habeas Corpus** [Docket No. 19; Filed February 20, 2008] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO.L.Civ.R. 72.1.C., the matter has been referred to this Court for recommendation. The Court has reviewed the Motion, Applicant's Responses [Docket No. 36; Filed July 10, 2008] and [Docket No. 47; Filed July 23, 2008], Respondents' Reply [Docket No. 48; Filed July 25, 2008], the entire case file, and the applicable law and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED**.

I.  **Standard of Review**

Although Respondents do not identify the appropriate standard of review for their Motion to Dismiss, they assert that this Court lacks jurisdiction over Applicant's case. Accordingly, the Court construes their Motion to Dismiss as brought pursuant to Fed. R.

Civ. P. 12(b)(1).

Subject matter jurisdiction is the court's authority to hear a case and cannot be waived. *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss pursuant to Rule 12(b)(1) may take two forms. First, if a party attacks the facial sufficiency of the complaint, the court must accept the allegations of the complaint as true. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).

Second, if a party attacks the factual assertions regarding subject matter jurisdiction through affidavits and other documents, the court may make its own findings of fact. *See Holt*, 46 F.3d. at 1003. "In a factual attack . . . the movant goes beyond the allegations in the complaint and challenges facts upon which subject matter jurisdiction depends." *Id.* at 1002. Further, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* A court's consideration of evidence outside the pleadings, including affidavits, will not convert the motion to dismiss to a motion for summary judgment under Rule 56. *Id.* This case involves the first kind of 12(b)(1) motion in that Respondents challenge the facial sufficiency of the complaint as to subject matter jurisdiction.

Finally, because Plaintiff here is proceeding *pro se*, the Court construes his pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003). Even so, Plaintiff still retains "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). This burden remains because a "*pro se* plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Id.*

## II. Statement of the Case

As the procedural history of this case is extremely complicated and relates to immigration court, state criminal, and federal habeas proceedings, the Court sets it forth in some detail. On December 20, 2007, Applicant filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, alleging, *inter alia*, that he was being illegally detained by Immigrations and Customs Enforcement ("ICE") [Docket No. 3]. Applicant, a citizen of Uganda, entered the United States on November 17, 1997. *Id.* at 7. He filed an application for asylum and withholding of removal on December 15, 1997. *Motion* [#19] at 2. Applicant's asylum application was denied, as the asylum office found that he "had failed to meet his burden of proof to establish asylum eligibility due to material inconsistencies in his interview." *Id.* The application was forwarded to an Immigration Judge ("IJ") and a Notice to Appear for removal proceedings was issued. *Id.*

On March 19, 1999, the IJ ordered Applicant removed to Uganda. *Id.* at 2. Applicant appealed this decision to the Board of Immigration Appeals ("BIA") on April 14, 1999. *Id.* On September 8, 2001, Applicant was arrested in Aurora, Colorado for

3

distribution of cocaine, and subsequently pled guilty to possession of a controlled substance on May 8, 2002. *Id.* at 2-3. On August 18, 2002, the BIA affirmed the IJ's denial of Applicant's asylum application. *Id.* at 3.

On December 10, 2002, Applicant was sentenced to serve two years in the Colorado Department of Corrections ("CDOC") for possession of a controlled substance. *Id.* Applicant withdrew his guilty plea on March 9, 2002, alleging a constitutional violation for the failure to inform him of the immigration consequences of his guilty plea for possession of a controlled substance. *Id.* He was allowed to withdraw his plea, and instead pled guilty to the charge of "trespass to agricultural land." *Id.*

Next, in requesting travel documents from Uganda, the Department of Homeland Security ("DHS") apparently inadvertently sent a copy of the IJ's March 19, 1999 Order to the Ugandan embassy. *Id.* In a separate action, Applicant then applied for a writ of habeas corpus, and the District Court of Colorado stayed his removal. *Id.* On March 31, 2004, Applicant filed an unopposed motion to reopen his case with the BIA, citing the alleged improper disclosure of the IJ's March 19, 1999 Order to the Ugandan embassy as the basis. *Id.* Applicant also sought a stay of his removal. *Id.* The motion to stay Applicant's removal was denied on April 18, 2004, although the BIA then granted the motion to reopen Applicant's asylum case and remanded the case to an IJ. *Id.* The IJ conducted a bond hearing, and Applicant was released on his own recognizance after posting bond. *Id.* Applicant was later arrested for a parole violation, and returned to the custody of the CDOC. *Id.* He was transferred into ICE custody on November 19, 2004. *Id.* On January 25, 2005, the IJ granted his asylum application. *Id.* DHS subsequently

appealed the IJ's asylum decision on the grounds that the record contained evidence of an aggravated felony conviction - the drug conviction - and that the IJ had improperly failed to consider or discuss the discretionary factor of Applicant's drug conviction. *Id.* at 4.

On July 21, 2005, the BIA reversed the decision of the IJ and remanded the matter for further proceedings, finding that the IJ had failed to determine the effect of the modification of Applicant's drug conviction on his application for asylum. The BIA found that, pursuant to applicable Tenth Circuit law, Applicant's 2002 drug offense "constitutes a felony punishable under federal narcotics law, thereby qualifying as a drug trafficking crime under 18 U.S.C. § 924(c)(2)," and therefore was an aggravated felony pursuant to applicable immigration laws. *Id.* However, based on the record before it, the BIA was unable to determine if the underlying drug conviction remained effective for immigration purposes, as the evidence did not provide the basis for withdrawing the original offense and allowing Applicant to enter a plea to a different crime. *Id.* For that reason, the BIA remanded the matter to the IJ for further proceedings. *Id.*

On July 20, 2005, Applicant was again arrested for a parole violation. *Id.* He was incarcerated with an anticipated release date of December 22, 2006. *Id.* On January 15, 2006, Applicant appealed to ICE for release, but was denied bond on January 23, 2006. *Id.* On February 6, 2006, an IJ again heard Applicant's asylum case, and granted him asylum. *Id.* at 4-5. On March 6, 2006, the IJ held a bond hearing and ordered Applicant to be released on his own recognizance. *Id.* at 5. The IJ further ordered that Applicant's fingerprints be taken, as the order could not be finalized until the required background checks were completed. *Id.* However, for an unknown reason Applicant was released

from ICE custody without his fingerprints being taken. *Id.*

On April 4, 2006, DHS appealed both Applicant's bond proceeding and removal proceeding to the BIA. *Id.* On October 4, 2006, the BIA issued its decision in the bond proceeding, thereby vacating the IJ's custody determination and again remanding the matter to the IJ for further proceedings. *Id.* On October 3, 2007, Applicant was detained by ICE. *Id.* On October 5, 2007, ICE filed a motion with the IJ to re-calendar the removal proceedings. *Id.* On October 23, 2007, the Immigration Court set a bond hearing for November 2, 2007. *Id.* At the November 2, 2007 bond hearing, Applicant appeared with counsel and waived the hearing. *Id.* On November 16, 2007, Applicant was detained by Arapahoe County and subsequently returned to ICE custody. *Id.* On December 6, 2007, ICE issued a new custody determination of no bond. *Id.* On December 7, 2007, a motion to re-calendar the removal proceeding was filed, due to the fact that Applicant was in DHS custody. *Id.* On December 19, 2007, ICE set Applicant's bond in the amount of $25,000. *Id.* at 5-6. On February 8, 2007, Robert Lindley, ICE Supervisory Detention and Deportation Officer, issued an order that Applicant's fingerprints be taken so that the Immigration Court could make a final determination regarding the asylum case. *Id.* at 6. However, as of February 20, 2008, no final order regarding asylum had been entered by the BIA. *Id.* Applicant apparently remains in ICE custody, as he does not have the means to pay the $25,000 bond amount. *Response* [#47] at 3.

In Applicant's Petition for a Writ of Habeas Corpus, he requests that the Court order his "unconditional release," and that Defendants be compelled to grant him "immigration benefits under immigration law, including employment authorization, et cetera." *Petition*

[#3] at 5. However, in his Responses, Plaintiff clarifies that he actually is not requesting that he be granted asylum or immigration benefits, and instead requests that he be released from ICE custody on "supervision pending his next asylum hearing . . . ." *Response* [#36] at 1; *Response* [# 47] at 1.

### III. Analysis

#### A. Applicant's Request for Release

Respondents first argue that Applicant's request for release on bond is moot, as he has already been granted bond in the amount of $25,000. *Motion* [#19] at 6. However, Applicant argues that he is not requesting to be released on bond, as he cannot afford to pay the bond amount. *Response* [#47] at 3. Instead, he contends that he is asking to be released "from ICE custody on supervision pending his next asylum hearing since there was no justification for revoking him from supervision, and he never violated any conditions of supervision." *Id.* at 1. Applicant further clarifies that "[h]is request from this court is for an ORDER to release him on either Order of Recognizance, or Order of Supervision, or ADT/BI-ISAP Ankle Bracelet Program or reinstatement of the previous ICE supervision since he did not commit any violations of the conditions of supervision before revoking him; he is not asking for a monetary bond." *Id.* at 3. Accordingly, the Court construes Applicant's Petition for Habeas Corpus as requesting that this Court modify the terms of Applicant's bond determination.

As such, Respondents challenge this Court's jurisdiction, arguing that the IJ's bond determination in Applicant's case is a discretionary action that the Court is precluded from reviewing pursuant to 8 U.S.C. § 1226(e). Respondents state that Applicant is being

7

detained pursuant to 8 U.S.C. § 1226(a).[1] *Reply* [#48] at 3. Section 1226(a) provides that the Attorney General may arrest and detain an alien, or release him on bond or conditional parole pending the removal decision. Section 1226(b) provides the Attorney General with the discretion to revoke a bond or parole under subsection (a).

As a preliminary matter, the Court must determine whether it has jurisdiction to review custody terms regarding an alien subject to pre-final removal detention under § 1226(a). The Court's analysis begins with Section 1226(e), which states:

> (e) Judicial Review
>
> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

8 U.S.C. § 1226(e).

Next, 8 U.S.C. § 1252(a)(2)(B)(ii) provides, in relevant part:

> (B) Denials of discretionary relief
>
> Notwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision, . . . no court shall have jurisdiction to review —
>
> . . .
>
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

The phrase "this subchapter" in 8 U.S.C. § 1252(a)(2)(B)(ii) refers to 8 U.S.C. §§

---

[1] In particular, § 1226(a) provides that the Attorney General "(1) may continue to detain [an] arrested alien; and (2) may release the alien on - - (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . ."

8

1151-1378. *See Yerkovich v. Ashcroft*, 381 F.3d 990, 992-93 (10th Cir. 2004) (citing *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999)). An IJ's authority related to bond determinations is found within 8 U.S.C. § 1226(a), a section within the referenced subchapter. As such, it appears that an IJ's decision to set bond for Applicant at $25,000 pursuant to § 1226(a) is a discretionary decision, and Congress has stripped the Court of jurisdiction to review such a decision pursuant to 8 U.S.C. § 1226(e) and § 1252(a)(2)(B)(ii).

In *Maramba v. Mukasey*, 2008 WL 1971378, *3 (N.D. Tex. 2008), the court found that "it lacked jurisdiction to review the decision to deny release on bond itself or the Attorney General's discretionary judgment regarding the application of § 1226(a), 'including the manner in which that discretionary judgment is exercised, and whether the procedural apparatus supplied satisfies regulatory, statutory, and constitutional constraints.'" (citing *Loa-Herrera v. Trominiski*, 231 F.3d 984, 991 (5th Cir. 2000)). The *Maramba* court further stated that it declined to exercise habeas jurisdiction over the claims seeking release on supervision or a lower bond under § 1226(a). *Id. See also Hatami v. Chertoff*, 467 F.Supp.2d 637, 639 (E.D.Va. 2006) (finding that 8 U.S.C. § 1226(e) bars judicial review of any aspect of a bond decision by the immigration courts); *Chavez v. I.N.S.*, 55 F. Supp. 2d 555, 557 (W.D.La. 1999) (finding that the court lacked jurisdiction to review Attorney General's discretionary decision to deny bond under 8 U.S.C. § 1226(a)).

Although not binding precedent, the Court finds these decisions persuasive. It appears that Applicant is seeking review of a discretionary decision made by the Attorney

9

General, and therefore, review of this decision is foreclosed by 8 U.S.C. § 1226(e) and 8 U.S.C. § 1252(a)(2)(B)(ii).

**B.    Exhaustion**

Moreover, even assuming that the Court had jurisdiction to review the terms of Plaintiff's custody and bond pursuant to § 1226(a), the Court agrees that Applicant would first be required to exhaust his administrative remedies. Respondents state that Applicant is being detained pursuant to 8 U.S.C. § 1226(a).[2] *Reply* [#48] at 3. Where the Attorney General has determined the terms of custody of an alien pursuant to § 1226(a), an alien may seek a redetermination of that decision by an IJ. *See* 8 C.F.R. § 1236.1(d)(1); 8 C.F.R. § 1003.19(c)(1)-(3). The IJ's decision regarding bond may then be appealed to the BIA. *See* 8 C.F.R. § 1236.1(d)(3); 8 C.F.R. § 1003.38(b).

On October 23, 2007, Applicant received notice of a bond hearing, set for November 2, 2007, through the attorney of record in his asylum case, Jim Salvator. *Motion* [#19] at Ex. B. Applicant and his attorney appeared at the bond hearing, and Mr. Salvator waived the hearing and stated that Applicant declined to have a bond hearing at that time. *Id.* at p. 2. Next, on December 17, 2007, Applicant's conditions for release were reconsidered, and Applicant's bond was reset to $25,000. *Id.* at Ex. A; p. 99. It is undisputed that a request for bond redetermination must be filed with the immigration court. *See* 8 C.F.R. § 1236.1(d)(1); 8 C.F.R. § 1003.19(c)(1)-(3). Further, a bond redetermination is then to be appealed to the BIA. *See* 8 C.F.R. § 1236.1(d)(3); 8 C.F.R.

---

[2]In particular, § 1226(a) provides that the Attorney General "(1) may continue to detain [an] arrested alien; and (2) may release the alien on - - (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General . . . ."

§ 1003.38(b). Moreover, before presenting a habeas petition to a federal court, it is well settled that an alien must exhaust his administrative remedies. *Camara v. Comfort*, 235 F.Supp.2d 1174, 1177 (D.Colo. 2002) (citing *Rashtabadi v. INS*, 23 F.3d 1562, 1567 (9th Cir. 1994)).

The record contains no indication that Applicant has exhausted his administrative remedies by requesting a bond redetermination, or appealing to the BIA. Accordingly, even assuming that the Court had jurisdiction to review Applicant's custody status pursuant to § 1226(a), Applicant is required to exhaust his administrative remedies by filing an application for redetermination of his bond status with the immigration court, and by appealing any unsatisfactory decision to the BIA.

### C. Due Process Challenge

Finally, to the extent that Applicant seeks to bring a pure constitutional challenge, alleging that his detention pursuant to § 1226(a) is in violation of the Due Process Clause, the Court finds that it is without jurisdiction to review Plaintiff's constitutional claims pursuant to 8 U.S.C. § 1252(a)(2)(D). Section 1252(a)(2)(D) provides:

> Nothing in subparagraph (B) or (C), or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with *an appropriate court of appeals* in accordance with this section.

8 U.S.C. § 1252(a)(2)(D) (emphasis provided).

Respondents argue that Section 1252(a)(2)(D) requires that any constitutional challenges to Applicant's detention be filed with the Tenth Circuit Court of Appeals. *Reply* [#48] at 4, fn. 2. Although the Court notes that a handful of district courts have found that

they have jurisdiction over "constitutional claims or questions of law" pursuant to Section 1252(a)(2)(D), based on this Court's review of the law, it appears that the majority of districts courts and circuit courts have held that this provision vests jurisdiction over constitutional claims solely with the applicable court of appeals, and not with district courts. See, e.g., Sillah v. Lara, 2008 WL 1823431, at * 2 (11th Cir. April 24, 2008) (unpublished decision) (finding "only the courts of appeal retain jurisdiction to consider constitutional and legal challenges to decisions pertaining to the denial of discretionary relief"); Jarad v. Gonzales, 461 F.3d 867, 869 (7th Cir. 2006) (Section 1252(a)(2) "authorizes courts of appeals to consider genuine constitutional challenges and non-discretionary questions of law); Lee v. U.S. Citizenship and Immigration Servs., 2008 WL 1805749, at *3 (D. Md. Apr. 8, 2008) (unpublished decision) (finding that, pursuant to 8 U.S.C. § 1252(a)(2)(D), the District Court lacked jurisdiction to hear Plaintiff's constitutional claims); Zheng v. Chertoff, 2008 WL 2229671, at * 4 (M.D. Fla. May 28, 2008) (unpublished decision) (finding that 8 U.S.C. § 1252(a)(2)(D) vests jurisdiction in the courts of appeals, not the district courts); Bah v. Cangemi, 489 F.Supp.2d 905, 913 (D. Minn. 2007) (finding that "the exception-found in § 1252(a)(2) (D) . . . applies only to the courts of appeals, not to the district courts."); Al-Bareh v. Chertoff, 552 F.Supp.2d 794, 799 (N.D. Ill. 2008) (finding that, pursuant to § 1252(a)(2)(D), challenges to the constitutionality of an alien's detention could only be brought in the court of appeals); Kaur v. Chertoff, 489 F.Supp.2d 52, 61 (D.D.C., 2007) (finding that the jurisdiction vested in the federal courts by § 1252(a)(2)(D) resides within the various circuit courts of appeal); Hoo Loo v. Ridge, 2007 WL 813000, at *2 (E.D.N.Y. Mar. 14, 2007) (unpublished decision) (finding that only the 2nd Circuit Court of

Appeals would have jurisdiction over constitutional claims); *Sikder v. Gonzales*, 2006 WL 1149153, at *2 (D.Colo. Apr. 28, 2006) (unpublished decision) (noting that pursuant to 8 U.S.C. § 1252(a)(2)(D), "it is clear that Congress meant for the appropriate court of appeals to determine constitutional challenges . . . ."); *Rodas v. Chertoff*, 399 F.Supp.2d 697, 706 (E.D. Va. 2005) (holding that under 8 U.S.C. § 1252(a)(2)(D), judicial review of due process claims "is limited to the courts of appeal; district courts have no jurisdiction to review such claims."); *but see Maramba*, 2008 WL 1971378 at *4 (finding the district court had jurisdiction to review constitutional claim) (citing *Fuller v. Gonzales*, 2005 WL 818614, at *2 (D. Conn. April 8, 2005) (citation omitted)); *Kambo v. Poppell*, 2007 WL 3051601, at *7 (W.D. Tex. 2007) (unpublished decision) (holding that the district court had jurisdiction over constitutional claim that detention pursuant to § 1226(a) violated the due process clause).

Upon review of the plain language of Section 1252(a)(2)(D), as well as the opinions of a majority of district courts, this Court agrees that "it is clear that Congress meant for the appropriate court of appeals to determine constitutional challenges,' and that Section 1252(a)(2)(D) requires any constitutional challenges to Applicant's detention to be filed with the Tenth Circuit Court of Appeals. *Sikder*, 2006 WL 1149153 at *2. Accordingly, the Court finds that it lacks jurisdiction to consider Applicant's due process claims.

IV. **Conclusion**

As set forth above, I respectfully **RECOMMEND** that **Respondents' Motion to Dismiss Application for Writ of Habeas Corpus** [Docket No. 19; Filed February 20, 2008] be **GRANTED** and that Applicant's Petition for Habeas Corpus be **DISMISSED WITHOUT PREJUDICE.**

FURTHER, IT IS **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Resources Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996).

BY THE COURT:
__s/ Kristen L. Mix_____
United States Magistrate Judge

Dated: August 7, 2008